**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan G. VINETTE, | ) No. CIV 04-1447-PHX-SMM |
| Plaintiff, | ) **MEMORANDUM OF DECISION AND ORDER** |
| v. | ) |
| SUN HEALTH CORPORATION, | ) |
| Defendant. | ) |

Pending before the Court are Defendant's Motion for Summary Judgment [Doc. No. 45], Plaintiff's Motion to Exceed Page Limitation re: Response [Doc. No. 53], and Defendants' Motion to Strike Declaration of Susan Vinette. [Doc. No. 59] After considering the parties' arguments, the Court issues the following Memorandum of Decision and Order. Because the Court finds that oral argument would not be helpful, the Court issues its Order without oral argument.

**I. BACKGROUND**

**A. Factual Background**

The following facts are undisputed.

Plaintiff Susan Vinette was employed as a laboratory assistant by Defendant Sun Health from June 17, 2001 to April 2, 2004. (Pl.'s Statement of Facts ("SOF"), ¶ 2; Def.'s SOF, ¶ 2; Ex. M to Def.'s SOF.)  Her duties included drawing blood from patients and processing the drawn samples for testing in the hospital laboratory. (Pl.'s SOF, ¶ 2.) Plaintiff

1 has hepatitis C, and disclosed that information to Defendant in her employment application.
2 (Id.)

3 From December 2002 until August 2003, Plaintiff underwent treatment for her
4 hepatitis C. (Pl. Dep. 61:20-23.) During some of the treatment period, Defendant granted
5 Plaintiff intermittent FMLA leave and modified Plaintiff's work schedule to allow her two
6 consecutive days off work to recuperate from her treatment. (Id. at 79:19-80:2, 81:7-82:20.)
7 Plaintiff committed five mislabeling or misidentification errors from December 2002 until
8 July 2003. (Exs. E, F, G, I, J to Def.'s SOF.) On each occasion, Plaintiff was counseled by
9 her supervisor[1] and signed an Employee Corrective Action Form indicating that she
10 understood that if she committed additional infractions, she could be subject to suspension
11 without pay or discharge. (Id.) After the final mislabeling incident in July 2003, Plaintiff
12 went on full-time FMLA leave. (Pl. Dep. 214:7-18.) Plaintiff returned to work in October
13 2003. (Id. at 90:10-18.)

14 On March 31, 2004, Plaintiff and a co-worker, Melanie Kuelbs, tied three
15 phlebotomist trays to the racks they were placed on as an April Fool's Day prank on another
16 co-worker. (Id. at 127:15-24, 129:12-130:12.) Following the incident, Plaintiff was
17 terminated for the prank and for another misidentification, which was committed by Kuelbs
18 after Plaintiff had improperly failed to log out after using the lab computer program. (Ex.
19 G to Pl.'s SOF, Ex. M to Def.'s SOF, Pl. Dep. 133:7-21.) Kuelbs, who had no prior
20 disciplinary history, was counseled and received an Employee Corrective Action Form. (Ex.
21 G to Pl.'s SOF; Ex. M to Def.'s SOF; Kuelbs Dep. 73:7-10; Wills Dep. 105:20-22.)

22 //
23 //

---

25 [1]Until approximately September 2003, Melissa Dettrick was Plaintiff's supervisor.
26 (Pl. Dep. 90:4-18.) At that time, Lisa Wills became Plaintiff's supervisor. (Id. at 90:10-20.)
During all of Plaintiff's employment, Judith Grout was the assistant administrator, a higher-
27 level employee than Dettrick or Wills. (Id. at 91:19-92:8.) Both a supervisor and the
assistant administrator sign an Employee Corrective Action Form. (See Exs. E, F, G, I, J, M
28 to Def.'s SOF.)

**B. Procedural Background**

On July 15, 2004, Plaintiff filed a Complaint in this Court alleging two counts: (1) discrimination in violation of the Americans with Disabilities Act and (2) intentional infliction of emotional distress. [Doc. No. 1] After the completion of discovery, Defendant filed its Motion for Summary Judgment on January 20, 2006. [Doc. No. 45] Plaintiff filed her Response on March 1, 2006 [Doc. No. 55], as well as a Motion to Exceed Page Limitation re: Response [Doc. No. 53]. Defendant did not respond to Plaintiff's Motion. The Court will grant Plaintiff's Motion to Exceed Page Limitation and consider the entirety of Plaintiff's Response. Defendant filed its Reply on March 30, 2006 [Doc. No. 61], as well as a Motion to Strike Plaintiff's Declaration under the sham affidavit doctrine [Doc. No. 59]. Plaintiff has not responded to Defendant's Motion to Strike.

The Court's exercise of jurisdiction over Count I is proper under 28 U.S.C. § 1331, because the matter in controversy arises under the Americans with Disabilities Act, 42 U.S.C. § 12112. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Count II, a state law claim, because it shares a "common nucleus of operative fact" with the federal claim. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). Venue is proper under 28 U.S.C. § 1391(b).

## II. MOTION TO STRIKE

Before ruling on Defendant's Motion for Summary Judgment, the Court first turns to Defendant's Motion to Strike Plaintiff's Declaration. Defendant argues that Plaintiff's Declaration ("Declaration"), submitted as Exhibit A to Plaintiff's Statement of Facts in support of her Response to the Motion to Summary Judgment, is a "sham" affidavit and should not be considered by the Court. Plaintiff has not responded to Defendant's Motion to Strike.

**A. Plaintiff's Failure to Respond to the Motion to Strike**

Rule 7.2(i) of the Rules of Practice of the United States District Court for the District of Arizona ("Local Rules") states that "if the opposing party [to a motion] does not serve and file the required answering memoranda . . . such non-compliance may be deemed a consent

1  to the denial or granting of the motion and the Court may dispose of the motion summarily."
2  Therefore, because Plaintiff has not responded to the Motion to Strike, Plaintiff is deemed
3  to have consented to the granting of the Motion to Strike.  Pursuant to Local Rule 7.2(i),
4  which allows this Court to summarily dispose of a motion in such a situation, Defendant's
5  Motion to Strike will be granted.

6  Alternatively, the Court concludes that the Motion to Strike should be granted on its
7  merits.

8  **B. Merits of Defendant's Motion to Strike**

9  The Ninth Circuit has held that "a court may disregard a 'sham' affidavit that a party
10 files to create an issue of fact by contradicting the party's prior deposition testimony." Leslie
11 v. Grupo ICA, 198 F.3d 1152, 1157 (9th Cir. 1999).  However, the non-moving party may
12 explain or clarify her prior testimony, and "minor inconsistencies that result from an honest
13 discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an
14 opposition affidavit."  Messick v. Horizon Indus., Inc., 62 F.3d 1227, 1231 (9th Cir. 1995).
15 Therefore, the Court will not apply the sham affidavit doctrine where the non-moving party
16 shows that a valid explanation exists for the inconsistency.  The Court must make a factual
17 determination that the contradiction is a "sham" before it may apply the sham affidavit
18 doctrine.  Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 267 (9th Cir. 1991).

19 Defendant moves to strike the Declaration as a result of numerous averments by
20 Plaintiff that contradict her sworn deposition testimony.  The Court will address alleged
21 contradictions that pertain to significant facts in this case.

22 1. Paragraphs 6, 8

23 In paragraph 6 of her Declaration, Plaintiff avers that her Hepatitis C symptoms began
24 in October 2002, and that those symptoms included "extraordinary fatigue, skin rash,
25 discoloration and lesions on [her] skin, persistent nausea, blurry vision, sleeplessness and a
26 general inability to engage in normal activities that were previously part of [her] normal
27 routine." (Decl. ¶ 6.)  At her deposition, however, Plaintiff testified that the blurred vision
28 and nausea occurred during her treatment, not before the treatment began.  (Pl. Dep. 61:1-8.)

- 4 -

1 Plaintiff also testified at her deposition that her hepatitis C symptoms consist only of sporadic
2 "tiredness" and "high enzyme levels." (Id. at 98:11-99:9.) Plaintiff further testified that
3 when she was not on treatment, she had no side effects from her hepatitis C. (Id. at 59:19-
4 23.) Plaintiff also testified that she had no symptoms at all after she completed her treatment.
5 (Id. at 226:22-227:2.) Plaintiff further testified that her hepatitis C has no impact on her daily
6 activities. (Id. at 194:25-195:2.) Moreover, Plaintiff was provided an opportunity at her
7 deposition to list more symptoms of her hepatitis C, but testified that there were no others to
8 report. (Id. at 98:18-19.) Only in her Declaration did Plaintiff list additional symptoms and
9 limitations on her everyday activities.

10 Plaintiff further avers in her Declaration at paragraph 8 that she experienced blurred
11 vision, fatigue, and nausea before her treatment began, which directly contradicts her
12 deposition testimony that (a) she experienced those symptoms during treatment and (b) her
13 testimony that when she was off treatment, she experienced only fatigue and high enzyme
14 levels. (Pl. Dep. 61:1-8; 98:11-99:9.)

15 The issue of what symptoms Plaintiff experienced and when she experienced them is
16 of particular import in this case. At her deposition, Plaintiff answered specific and exacting
17 questions, and Plaintiff did not correct or supplement her deposition as allowed by the
18 Federal Rules of Civil Procedure. Rather, in her Declaration, Plaintiff attempts to contradict
19 her deposition testimony. The Court concludes that the inconsistencies outlined above
20 cannot be classified as minor ones "that result from an honest discrepancy, a mistake, or
21 newly discovered evidence," nor are they merely attempts to explain her previous testimony.
22 See Messick, 62 F.3d at 1231. Because of the significant discrepancies regarding the details
23 of Plaintiff's condition, the Court concludes that paragraphs 6 and 8 of Plaintiff's Declaration
24 are a "sham" intended to create a genuine issue of material fact as to the severity of her
25 disease.
26 //
27 //
28 //

2.  Paragraph 10

Plaintiff avers in her Declaration that "there were several occasions in which I fainted while trying to climb the stairs [at work]." (Decl. ¶ 10.) However, in her deposition, Plaintiff repeatedly asserted that she fainted only once at work. (Pl. Dep. 59:15-16 ("I fainted upstairs one time."); 61:12-13 ("Q: What about the fainting; how often did that occur? A: One time at work.")) Plaintiff's Declaration thus directly contravenes her deposition testimony, and the Court concludes that this portion of Plaintiff's Declaration is a "sham" intended to create a genuine issue of material fact as to the severity of Plaintiff's disease.

3.  Paragraph 12

In her Declaration, Plaintiff avers that her supervisor, Lisa Wills, took Plaintiff's calls on Monday mornings when Plaintiff would call in sick. (Decl. ¶ 12.) Plaintiff further states that, over time, Wills' tone became "progressively harsher and disapproving," and Wills would make comments like "What do you want me to do about it?" and "Whatever" and "I guess you have to do what you have to do." (Id.) However, Plaintiff testified at her deposition that Wills "was really nice to me up until I got fired" and that no one other than three of Plaintiff's co-workers made rude comments to her. (Pl. Dep. 241:6-14.) Thus, when she was directly questioned as to whether anyone other than the three co-workers made comments, Plaintiff responded negatively at her deposition. (Id.) Only in her Declaration did Plaintiff provide detailed information as to how rudely Wills spoke to her. (Decl. ¶ 12.) In light of these directly contradictory statements, the Court finds Plaintiff's Declaration is a "sham" intended to create a genuine issue of material fact as to whether accommodations were made to Plaintiff.

Conclusion as to Motion to Strike

"If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Leslie, 198 F.3d at 1157 (internal punctuation and quotation omitted). The Court concludes that the level of discrepancy between Plaintiff's deposition testimony and

1 statements in her Declaration rise above the level of minor inconsistencies.  In response to
2 direct questioning at her deposition on key issues, Plaintiff responded in one way and then
3 later averred contrarily in her Declaration.  Plaintiff did not file a Response to the Motion to
4 Strike, nor did she amend or supplement her deposition or Declaration.  Plaintiff therefore
5 has not attempted to explain or clarify her contradictory statements in the Record.  In light
6 of these inconsistencies, the Court finds the affidavit was filed for the purpose of creating a
7 genuine issue of material fact in an effort to preclude summary judgment.

8 The Court will therefore grant Defendant's Motion to Strike for failure to respond
9 pursuant to Local Rule 7.2(i) and on the Motion's merits.  Consequently, the Court will
10 disregard the Declaration of Susan Vinette in its analysis of the pending Motion for Summary
11 Judgment.

## III.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

14 A court must grant summary judgment if the pleadings and supporting documents,
15 viewed in the light most favorable to the nonmoving party, "show that there is no genuine
16 issue as to any material fact and that the moving party is entitled to judgment as a matter of
17 law."  FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
18 Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law
19 determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248
20 (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the
21 outcome of the suit under the governing law will properly preclude the entry of summary
22 judgment."  Anderson, 477 U.S. at 248.  The dispute must also be genuine, that is, the
23 evidence must be "such that a reasonable jury could return a verdict for the nonmoving
24 party."  Id.; see Jesinger, 24 F.3d at 1130.

25 A principal purpose of summary judgment is "to isolate and dispose of factually
26 unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate
27 against a party who "fails to make a showing sufficient to establish the existence of an
28 element essential to that party's case, and on which that party will bear the burden of proof

- 7 -

at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

**B. Discussion**

Defendant moves for summary judgment as to both of Plaintiff's claims, discrimination in violation of the Americans with Disabilities Act ("ADA") and intentional infliction of emotional distress. The Court addresses each claim in turn.

1. ADA

Plaintiff bases her ADA claim on three grounds: disparate treatment, reasonable accommodations, and hostile work environment. Also, Plaintiff argues in her Response to the Motion for Summary Judgment that a finding by an Arizona Department of Economic Security ("ADES") administrative law judge that Plaintiff "was discharged for other than misconduct in connection with the employment" collaterally estops the litigation of the issue of whether Plaintiff was terminated for unsatisfactory job performance. [Doc. No. 55 at 1.] Before discussing the three grounds of Plaintiff's ADA claim, the Court first addresses Plaintiff's collateral estoppel argument.

a. Collateral estoppel

Federal courts must look to state preclusion law to determine the preclusive effect of state judicial proceedings on a subsequent federal court action. See 28 U.S.C. § 1738. Here, Arizona law specifically provides that any finding of fact or law by an administrative law judge of ADES "*is not conclusive or binding* in any separate or subsequent action or proceeding and *shall not be used as evidence* in any separate or subsequent action or proceeding between an individual and the individual's present or former employer brought before a[] court or judge . . . of the United States." A.R.S. § 23-672.01. Thus, the findings

- 8 -

of the ADES' administrative law judge are not entitled to preclusive effect in this Court, nor are they admissible evidence in this case. The Court therefore rejects Plaintiff's contention that a finding by an ADES administrative law judge has preclusive effect in this litigation.

    b. Prima facie case under the ADA (disparate treatment and reasonable accommodation)

Under the ADA, it is unlawful for an employer to discriminate against an employee based on the employee's disability. Discrimination can occur where there is disparate treatment or when an employer fails to make reasonable accommodations for an employee's disability. See McGary v. City of Portland, 386 F.3d 1259, 1265-66 (9th Cir. 2004). To establish a prima facie case under the ADA for discrimination, Plaintiff must demonstrate that: (1) she is "disabled" within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of her job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. Allen v. Pacific Bell, 348 F.3d 1113, 1114 (9th Cir. 2003) (per curiam).

    i. Whether Plaintiff is disabled under the ADA

A disability is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C).

    A. Disability under Section 12102(2)(A)

Subsection (A) involves three inquiries: (1) whether Plaintiff's hepatitis C is a physical impairment, (2) whether the life activities curtailed by such impairment are "major life activities," and (3) whether the impairment "substantially limits" the major life activities at issue. Bragdon v. Abbott, 524 U.S. 624, 631 (1998); Frasier v. Goodale, 342 F.3d 1032, 1038 (9th Cir. 2003).

First, the Court finds that Plaintiff's hepatitis C is a physical impairment. A physical impairment is defined as any "physiological disorder or condition . . . affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genito-urinary;

- 9 -

1 hemic and lymphatic; skin, and endocrine." 45 CFR § 84.3(j)(2)(i).  However, "[m]erely
2 having an impairment does not make one disabled for purposes of the ADA."  Toyota Motor
3 Mfg., Ky. Inc. v. Williams, 534 U.S. 184, 195 (2002).  Rather, Plaintiff's physical impairment
4 must substantially limit any of her major life activities, and the impairment must be
5 permanent or long term.² Id. at 198.

6   "'Major life activities' . . . refers to those activities that are of central importance to
7 daily life."  Id. at 197.  Functions "such as caring for oneself, performing manual tasks,
8 walking, seeing, hearing, speaking, breathing, learning, and working" constitute major life
9 activities.  29 CFR § 1630.2(i).  In this case, Plaintiff indicates nowhere in her pleadings
10 specifically which major life activities are substantially limited by her hepatitis C.  Of the
11 major life activities listed in the Code of Federal Regulations, *supra*, working is the only
12 major life activity that Plaintiff apparently contends is substantially limited.

13   In Sutton v. United Air Lines, Inc., the Supreme Court noted that "[t]he inability to
14 perform a single, particular job does not constitute a substantial limitation in the major life
15 activity of working."  527 U.S. 471, 491 (1999) (citing 29 CFR § 1630.2(j)(3)(i)).  Instead,
16 a plaintiff must allege that she is unable to perform in a broad class of jobs.  Id.  "To be
17 substantially limited in the major life activity of working, then, one must be precluded from
18 more than one type of job, a specialized job, or a particular job of choice.  If jobs utilizing
19 one's skills (but perhaps not his or her unique talents) are available, one is not precluded from
20 a substantial class of jobs.  Similarly, if a host of different types of jobs are available, one is
21 not precluded from a broad range of jobs."  Id. at 492.  Here, Plaintiff has not alleged that she
22 is unable to perform in a broad class of jobs.  To the contrary, Plaintiff contends in her
23 Complaint that she "was able to perform her job when she was working."  (Compl. ¶ 11.)  In

---

26 ²The Ninth Circuit has not addressed whether a plaintiff has to be disabled when the adverse employment action was taken against him or her.  Other Circuits have required such
27 a showing.  See e.g., Nowak v. St. Rita High School, 142 F.3d 999, 1003 (7th Cir. 1998); Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 884 (8th Cir. 1996).  The Court need not
28 reach this issue, however, for reasons stated *infra*.

1  addition, Plaintiff testified at her deposition that her hepatitis C did not affect her ability to
2  work in any way after her treatment ended, and the treatment had actually been unsuccessful
3  in curing her condition. (Pl. Dep. 195:6-14, 226:22-227:2.)

4  To determine whether Plaintiff is substantially impaired, the Court must make an
5  individualized assessment of Plaintiff's impairment. Id. at 198-99 (also noting that a case-by-
6  case determination is particularly important "when the impairment is one whose symptoms
7  vary widely from person to person"). The Ninth Circuit has held that, at the summary
8  judgment stage, a court can consider medical testimony and/or the plaintiff's own declaration
9  when determining whether a plaintiff is disabled within the meaning of the ADA. Head v.
10 Glacier Northwest, Inc., 413 F.3d 1053, 1059-60 (9th Cir. 2005). Here, discovery has been
11 completed, and Plaintiff provides no medical testimony. Rather, in her Response to the
12 instant Motion, Plaintiff emphasizes the Head case, which holds that medical evidence is not
13 required at the summary judgment stage so long as a plaintiff's declaration is not self-serving
14 and contains sufficient detail to convey the existence of the impairment. Id.; [Doc. No. 55
15 at 11-12.] Plaintiff argues that her Declaration therefore suffices at the summary judgment
16 stage, as her Declaration amply "details her disability." [Doc. No. 55 at 11-12.] The Court
17 therefore concludes that Plaintiff relies on her Declaration, rather than medical testimony,
18 to support her contention that she is disabled under the ADA. However, as a result of the its
19 finding that Plaintiff's Declaration is a "sham," the Court has stricken Plaintiff's Declaration.
20 In the absence of a Declaration by Plaintiff, the Court can consider medical testimony, but

no such testimony has been presented to the Court.[3] Thus, Plaintiff has failed to provide the Court with any evidence on which to make a finding of a "disability."[4]

In addition, the Court notes that a plaintiff must "present specific evidence about relevant labor markets to defeat summary judgment on a claim of substantial limitation of 'working.'" Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 796 (9th Cir. 2001). Here, because Plaintiff has "failed to present evidence of the jobs from which she was precluded and of the relevant labor markets for that class of jobs," summary judgment is appropriate. See id. (upholding summary judgment in such a situation)

---

[3]Plaintiff attached to her Statement of Facts a "Certification by Health Care Provider," which was completed by Plaintiff's physician in March 2003 and thereafter provided to Defendant in support of Plaintiff's FMLA request. (Ex. J to Plaintiff's SOF.) In the Certification, Plaintiff is described as undergoing treatment for hepatitis C, and "[s]evere side effects are indicated." (Id.) However, it is not clear who "indicated" the side effects, and the side effects are not listed or detailed. (See id.) Additionally, the physician wrote "N/A" in response to "Please list any functions of the employee's job that cannot be performed." (Id.) (emphasis in original) Thus, even if the Court were to consider this documentation, which is not sworn testimony, the documentation does not demonstrate that Plaintiff's major life activity of working is substantially limited by her hepatitis C.

[4]The Court notes that, even if it were to consider the only evidence regarding Plaintiff's symptoms, Plaintiff's deposition testimony, Plaintiff still would not demonstrate a substantial limitation on the major life activity of working. At her deposition, Plaintiff testified that, when she was symptomatic, her symptoms consisted of sporadic "tiredness" and "high enzyme levels." (Pl. Dep. 98:11-99:9.) Plaintiff also testified that she fainted once at work. (Id. at 59:15-16; 61:12-13.) In addition, Plaintiff testified that she experienced constant blurred vision, nausea, anemia, and shortness of breath when she was on her hepatitis C treatment, from December 2002 until August 2003. (Id. at 61:1-23.) However, that testimony does not show that Plaintiff is unable to perform either a class of jobs or a broad range of jobs in various classes. See Sutton, 527 U.S. at 491-92 (quoting 29 CFR § 1630.2(j)(3)(i)-(ii)). Also, an inability to do one particular job is not enough to show a substantial limitation in the major life activity of working. Id. Furthermore, although the Supreme Court has held that the substantial limitation must be permanent or long term, Toyota Motor Mfg., 534 U.S. at 198, Plaintiff has proffered no evidence to demonstrate that any substantial limitation any major life activity is permanent or long term. Indeed, Plaintiff testified at her deposition that her condition does not affect any of her daily activities. (Pl. Dep. 194:25-195:2.) Finally, Plaintiff notes that co-workers noticed that her mislabeling and misidentification errors took place during her treatment for hepatitis C, but this does not cure the lack of pertinent evidence the Court has just identified.

1    Consequently, the Court concludes that Plaintiff's impairment does not substantially
2 limit a major life activity. Plaintiff is therefore not disabled within the meaning of the ADA
3 unless there is a record of such an impairment under Section 12102(2)(B), or she is regarded
4 as having such an impairment under Section 12102(2)(C).

### B.  Disability under Section 12102(2)(B)

6    A disability under the ADA can also exist where there is a record of an impairment
7 that substantially limits a major life activity. 42 U.S.C. § 12102(2)(B); see 29 CFR §
8 1630.2(k). As stated above, Plaintiff has not produced any evidence that her physical
9 impairment substantially limits any major life activities. Indeed, Plaintiff testified that she
10 is not impacted or limited by her condition:

> Q [by defense counsel]: And does your hepatitis C currently limit or impact any of your daily activities?
> A [by Plaintiff]: Not to my knowledge.

13 (Pl. Dep. 194:25-195:2.) Therefore, a record of Plaintiff's impairment here is insufficient to
14 establish a disability under Section 12102(2)(B), nor does Plaintiff claim disability status
15 under this section.

### C.  Disability under Section 12102(2)(C)

17    A disability also exists under the ADA where an individual is regarded as having an
18 impairment that substantially limits a major life activity. 42 U.S.C. § 12102(2)(C).

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one ore more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual - it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

24 Sutton, 527 U.S. at 489; Deppe v. United Airlines, 217 F.3d 1262, 1265 (9th Cir. 2000).
25    Although Plaintiff does not advance this argument in her Response, by implication
26 Plaintiff alleges that because Defendant allowed her to work under a modified schedule
27 through the FMLA, Defendant regarded her as disabled because her major life activity of

- 13 -

1  working was limited. However, Plaintiff has made no showing that her major life activity
2  of working was misperceived as substantially limited in the eyes of Defendant per Sutton.
3  The Ninth Circuit has held that an employer who follows lifting restrictions imposed
4  by a doctor does not equate to regarding someone as disabled. See Thompson v. Holy
5  Family Hospital, 121 F.3d 537, 541 (9th Cir. 1997). It logically follows, therefore, that an
6  employer who modifies an employee's work schedule based on a physician's certification
7  similarly does not equate to regarding someone as disabled.
8  Thus, because Plaintiff has not shown that Defendant regarded Plaintiff as
9  substantially limited in the performance of any major life activity, Plaintiff cannot be
10 considered disabled under Section 12102(2)(C).

D. Conclusion on whether Plaintiff is disabled under ADA

12 Absent a showing of an impairment that substantially limits a major life activity, a
13 record of such impairment, or being regarded as having such an impairment, Plaintiff is not
14 subject to the protections of the ADA. Because Plaintiff has failed "to make a showing
15 sufficient to establish the existence of an element essential to [her] case, and on which [she]
16 will bear the burden of proof at trial," Celotex, 477 U.S. at 322; see also Citadel Holding
17 Corp., 26 F.3d at 964, summary judgment is appropriate as to Plaintiff's ADA claim.
18 The Court notes that, even assuming Plaintiff could show she was disabled and a
19 qualified individual under the ADA, Defendant has proffered legitimate, non-discriminatory
20 reasons for terminating Plaintiff's employment. Thus, with regard to her reasonable
21 accommodation and disparate treatment claims, Plaintiff could not show that the adverse
22 employment decision was made based on her disability or that it was pretextual. See Allen,
23 348 F.3d at 1114; see also Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 271 (9th Cir.
24 1996). Rather, Defendant offers a nondiscriminatory reason for terminating Plaintiff:
25 Plaintiff had a history of mislabeling and misidentification errors[5] and she potentially

---

[5] Plaintiff had received five previous Employee Corrective Actions for mislabeling or misidentifying specimens. (Exs. E, F, G, I, J to Def.'s Statement of Facts.)

- 14 -

compromised patient and staff safety with her April Fool's "prank" of tying phlebotomy trays together. The Court notes the particular importance of protecting the safety of patients by health care industry employers such as Defendant.

Therefore, the Court concludes that Plaintiff's reasonable accommodation and disparate treatment claims under the ADA fail as a matter of law, because Plaintiff has failed to prove an essential element of those claims. The Court now proceeds to Plaintiff's hostile work environment claim.

### c. Hostile work environment under the ADA

Plaintiff also claims that she suffered a hostile work environment in violation of the ADA. The Ninth Circuit has not recognized such a claim, and has expressly declined to decide whether such a claim exists. See Brown v. City of Tucson, 336 F.3d 1181, 1190 (9th Cir. 2003). However, other courts have either explicitly found that the ADA encompasses a disability-based harassment claim, see Flowers v. S. Regional Physician Servs., Inc., 247 F.3d 229, 233 (5th Cir. 2001), or have acknowledged the possibility of a hostile work environment claim under the ADA, see e.g., Walton v. Mental Health Ass'n of Southeastern Penn., 168 F.3d 661, 666 (3d Cir. 1999). In each instance, courts have applied the analysis employed in Title VII cases. For purposes of this Motion, the Court assumes, without deciding, that such a claim exists and that the applicable analysis is that of Title VII claims.

To establish a prima facie case for hostile work environment based on disability, Plaintiff must show that: (1) she is a qualified individual with a disability; (2) she was subjected to verbal or physical harassment; (3) the harassment was based on her disability or her request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that Defendant knew or should have known of the harassment and failed to take prompt effective remedial action. See Flowers, 247 F.3d at 235-36.

The Court concluded in this Order, *supra*, that Plaintiff has failed to present evidence sufficient to raise a fact question as to whether she is disabled under the ADA. Thus, Plaintiff cannot prove that she is a qualified individual with a disability, the first element of the prima

facie case for hostile work environment.  Accordingly, Plaintiff's hostile work environment claim fails as a matter of law.

Alternatively, even if Plaintiff could show she was disabled under the ADA, the Court notes that the conduct was not sufficiently severe or pervasive such that the working environment was abusive.  Plaintiff testified at her deposition that, because Plaintiff was allowed to take time off because of her condition and the "attention" she received, co-workers would not ask her to participate in signing farewell cards or ordering out for lunch and would make rude comments to Plaintiff.  (Pl. Dep. 103:7-17; 107:4-23.)  The Court concludes that although some of her co-workers may not have been pleasant to Plaintiff, none of their conduct rises to the level of pervasive or abusive.  Offhand comments or isolated incidents, unless extremely serious, "will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  Furthermore, the Court will not require Defendant to ensure that all of its employees get along with one another; to do otherwise would be to wrongly interpret the ADA (and Title VII) as a "general civility code for the American workplace."  See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998).  In addition, there is no evidence that Plaintiff ever complained of her co-workers' conduct to a supervisor.  Thus, the Court concludes that Plaintiff's co-workers' conduct is insufficiently severe to support a hostile work environment claim and summary judgment is appropriate as to that claim.[6]

### d. Conclusion on ADA claim

Because the Court finds that Plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," Celotex, 477 U.S. at 322, the Court grants Defendant's Motion for

---

[6]Plaintiff also alleges that supervisor Wills was rude to her, but that allegation appears only in Plaintiff's Declaration, which has been stricken.  Even if Court were to consider those alleged comments, however, they would not rise to the level of changing the terms and conditions of Plaintiff's employment.  See Faragher, 524 U.S. at 788.

- 16 -

Summary Judgment as to Plaintiff's ADA claim on all grounds: reasonable accommodation, disparate treatment, and hostile work environment.

### 2.  Intentional infliction of emotional distress

Plaintiff also claims that Defendant is liable under Arizona law for intentional infliction of emotional distress.[7]

To establish a claim for intentional infliction of emotional distress under Arizona law, Plaintiff must prove three elements.  First, Defendant's conduct must be capable of being characterized as "extreme and outrageous."  Watts v. Golden Age Nursing Home, 619 P.2d 1032, 1035 (Ariz. 1980) (citing Restatement (Second) of Torts § 46).  With regard this first element, "liability has only been found where the conduct has been so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as so atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. (citing comment d to § 46 of Restatement (Second) of Torts).  Thus, the conduct necessary to sustain an intentional infliction of emotional distress "falls at the very extreme edge of the spectrum of possible conduct."  Id.  Additionally, "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Mintz v. Bell Atlantic Sys. Leasing, 905 P.2d 559, 562 (Ariz. App. 1995) (quoting Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988), cert. denied, 498 U.S. 811 (1990)).  When reasonable minds could differ as to whether conduct is sufficiently extreme or outrageous, the issue goes to the jury.  Id. at 563.

---

[7] In her Response, Plaintiff makes the conclusory statement that Defendant is liable for intentional "and/or" negligent infliction of emotional distress [Doc. No. 55 at 2].  However, Plaintiff did not allege negligent infliction of emotional distress in her Complaint, and Plaintiff does not argue negligent infliction of emotional distress in her Response.  The Court will consider only those counts that are present in the Complaint and therefore will not address negligent infliction of emotional distress.

In addition to the first element, Plaintiff must show that Defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct and that Plaintiff suffered severe emotional distress as a result of defendant's conduct. Watts, 619 P.2d at 1035 (citing Restatement (Second) of Torts § 46).

In support of her intentional infliction of emotional distress claim, Plaintiff argues in her Response as follows:

> [sic] the fact of the case at bar, as stated in Plaintiff's] Declaration raise material issues of material facts as to whether [Defendant] is liable to [Plaintiff] for intentional infliction of emotional distress. [Defendant's] conduct was extreme and outrageous. [Plaintiff] was forced to endure the threat of termination, discomfort and pain and the humiliation of her colleagues. Lisa Wells and Judy Grout, both supervisors were aware of what they were doing. [Plaintiff] did suffer both emotional distress and the aggravation of her already compromised condition.

[Doc. No. 55 at 19.]

Thus, Plaintiff identifies Defendant's extreme and outrageous conduct as "threat of termination, discomfort and pain and humiliation of her colleagues." Id. However, Plaintiff provides no further evidence beyond that conclusory statement, and Plaintiff's Declaration has been stricken. After carefully reviewing the entire Record in this case (with the exception of Plaintiff's stricken Declaration) in the light most favorable to Plaintiff, the Court is unable to locate a single instance of conduct that "falls at the very extreme edge of the spectrum of possible conduct." See Watts, 619 P.2d at 1035. Liability for tort of intentional infliction of emotional distress "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions . . ., and . . . plaintiffs must necessarily be expected and are required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46, comment d.

Also, although Plaintiff alleges in her Complaint that her emotional distress was "severe" (Compl. ¶ 25), Plaintiff has failed to provide a scintilla of evidence regarding the severity of the emotional distress she has suffered. Rule 56 of the Federal Rules of Civil Procedure and case law applying Rule 56 require that Plaintiff come forward with supporting facts or evidence at the summary judgment stage. FED. R. CIV. P. 56(e); Matsushita, 475 U.S. at 586-87. Plaintiff has introduced no such evidence.

1 Because Plaintiff has failed to make a showing sufficient to establish at least two
2 essential elements of her claim for intentional infliction of emotional distress, the Court
3 concludes that summary judgment as to this claim is appropriate. See Celotex, 477 U.S. at
4 322.

### IV. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 45] is **GRANTED**. The Clerk of Court will enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exceed Page Limitation re: Response [Doc. No. 53] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Declaration of Susan Vinette. [Doc. No. 59] is **GRANTED**. The Clerk of Court is directed to strike Plaintiff's Declaration, attached as Exhibit A to Plaintiff's Statement of Facts [Doc. No. 55].

DATED this 21st day of June, 2006.

Stephen M. McNamee
United States District Judge